**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOEL M. YOUNG,
 an individual,

     Plaintiff,

v.                                                                                      No. 21-cv-00917-JB-SCY

TESLA, INC.,
 a Delaware Corporation,

     Defendant.

**<u>RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>**

COMES NOW the Plaintiff, Joel M. Young, and respectfully submits the following in opposition to Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6):

**<u>INTRODUCTION</u>**

The Complaint alleges that Tesla is engaged in perhaps the largest serial wire fraud and embezzlement scheme in United States history.[1] Complaint [Doc. 1, p. 9-12]. Tesla's motion further illuminates how the company's scheme was intended to work. When combined with the dissemination of contradictory parol evidence via its website and CEO Musk's public remarks, the artfully drafted sales agreement is calculated to short circuit any effort by Tesla's victims to hold the company accountable for its misconduct at law or in equity.

Tesla's motion relies on five tactics: **(i)** distorting the facial plausibility standard established in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); **(ii)** flouting the Court's rules requiring that the allegations must be read together, and allowing amendments absent futility; **(iii)** arguing contrary to New Mexico law that commencement of a suit constitutes a conclusive election of remedies requiring dismissal of Young's alternative claims before the close of evidence; **(iv)** misrepresenting the allegations

---

[1] Young believes that his duty under 18 U.S.C. § 4 has been satisfied by filing the Complaint and this brief.

to controvert and materially alter their significance under controlling New Mexico law that it ignores; while **(v)** pointing to inapposite and non-binding cases, inviting reversible error.

The Court should reject Tesla's plot to deprive victims of its illegal scheme of any civil remedy, and require Tesla to file an answer so that Young may discover "the fullest possible knowledge" of the alleged misconduct. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

## ARGUMENT

### I.   TESLA MISREPRENTS THE ALLEGATIONS AND FLOUTS THE COURT'S RULES FOR ASSESSING A PLEADING TO MISDIRECT THE FACIAL PLAUSIBILITY ANALYSIS

The Tenth Circuit has clarified the often misunderstood impact of *Iqbal* and *Twombly* on assessing the legal sufficiency of factual allegations: "As long as sufficient factual matter exists to sustain a claim, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *President and Fellows of Harvard College v. Elmore*, 222 F.Supp.3d 1050, 1059 (10th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 663, *Twombly,* 550 U.S. at 556) (internal quotes omitted).

When applying its discretion to assess a complaint, a district court must heed Rule 15(a)'s direction that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). That means leave to amend shall be granted unless "it is patently obvious that the plaintiff could not prevail on the facts alleged, *and* allowing him an opportunity to amend his complaint would be futile." *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (emphasis added). Therefore, "a court should dismiss *with leave to amend* . . . if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief." *Staats v. Cobb*, 455 F. App'x 816, 818 (10th Cir. 2011) (quoting *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1483, at 587 (2d ed. 1990).

Despite this clear direction from the Tenth Circuit, Tesla deploys numerous tactics to misdirect the Court's facial plausibility analysis.  First, Tesla presents a table in which it urges the Court to read each of several paragraphs in obsessive isolation, parroting essentially the same criticism in varying formulations: "*This* allegation also does not identify *what* Tesla statements Plaintiff purportedly relied on[;]" or "*the* allegation does not indicate *what* specific 'representation' was 'repeated' to Plaintiff 'verbally[;]'" etc. MTD [Doc. 14, pp. 15-17] (emphasis added).  The U.S. Supreme Court rejected Tesla's tactic fourteen years ago: "the inquiry . . . is whether ***all** of the facts alleged **taken collectively***, give rise to a strong inference of scienter, ***not** whether any individual allegation, **scrutinized in isolation**,* meets that standard." *Tellabs, Inc. v. Makor Issues and Rights*, *LTD*, 551 U.S. 308, 322 (2007) (emphasis added); *Rivelli v. Twin City Fire Ins. Co*., 359 Fed.Appx. 1, 3-4 (10th Cir. 2009) (allegations when read together plausibly state claim); *Mestas v. CHW Group Inc.*, 508 F.Supp.3d 1011, 1024 (D.N.M. 2020) (numerous paragraphs read together plausibly stated claim).

Tesla provides no authority for reading the allegations in isolation, which alone is sufficient to reject its arguments, for the court will "assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *Matter of Adoption of Doe*, 1984-NMSC-024, ⁋ 2, 100 N.M. 764, 676 P.2d 1329; *Leathers v. Leathers*, 856 F.3d 729, 751 (10th Cir. 2017) (rejecting unsupported arguments).

Tesla next invites the Court to endorse a preposterous assertion regarding its misrepresentations and omissions predating the Agreement that fraudulently induced Young to purchase his car: "Plaintiff does not allege that he *actually saw or heard* these statements *before* purchasing his vehicle . . . *so there is no basis to conclude* that the statements *in any way* informed his contractual expectations." MTD [Doc. 14, p. 9] (emphasis added).

Absent possession of a calendar and common sense, perhaps not. But presuming that the Court possesses both of those things, Tesla's ruse is laid bare. The company misrepresents what Young alleged in the Complaint, and exploits those fabrications to improperly controvert facts that must be taken as true for purposes of its Rule 12(b)(6) motion, and to make its attack on the facial plausibility of Young's well-pled claims appear legitimate. A handful of examples suffice to demonstrate that Young's allegations *when read together* support the reasonable inference that Tesla is liable for the alleged misconduct:

> *Before* entering into the Agreement on May 20, 2019, *Tesla solicited Young via the wires on its website and through the representations of CEO Musk* to pay the company $60,100 in exchange *for a car equipped with a specific product that* **Tesla labeled** *Full Self-Driving Capability, and* **Young acted** *in justifiable and detrimental reliance* **on the company's** *public, highly specific, imperative, and* **repeated representations** *that*:

> the product was an autonomous self-driving system equivalent to SAE Level 4 or 5 automated driving, **as** *a plain language reading of the term implies* **and as CEO Musk specifically represented on numerous occasions** *including but not limited to during* **February** *[and]* **April** *. . . of 2019* as alleged herein . . .

> Young's 2019 Model 3 *would come with* all computer hardware and other equipment *necessary to enable* Full Self-Driving Capability *and thereby achieve* SAE Level 4 or 5 automated driving . . .

> "SAE Level 4 or 5 automated driving *would be delivered by* the end of 2019 *as CEO Musk had promised* in specific and imperative language: "*I am certain of that. That* **is not** *a question mark.*"

Complaint [Doc. 1, pp. 26-27] (emphasis added). Even without a calendar, it is inescapable as a matter of grammar, logic, and common sense that a *solicitation* to order a Model 3 must predate an *order*. However, Young places the above events in temporal context with numerous allegations that are conspicuously absent from Tesla's table, such as Paragraph 17:

> **On the day** that Young **responded to** *Tesla's solicitation . . .* **on the company's interactive** *website* **and ordered** his 2019 Model 3

> *. . . Tesla's Model 3* **ordering** *page* **contained** *substantially* **the**
> **same representation** *repeatedly made by CEO Musk that Full*
> *Self-Driving Capability was "coming later* **this year**.*"*

Complaint, [Doc. 1, p. 17] (emphasis added).  Crucially in this regard, it does not matter

whether the Court reasonably infers that Young observed the solicitation on Tesla's interactive

website for one hour or for ten seconds before ordering his Model 3.  The only *reasonable*

inference from the allegations "read together" as they must be, *Tellabs*, 551 U.S. at 322, is that

Young *heard* Musk's **February** and **April** representations and *saw* or *read* Tesla's solicitation

*before* he *responded to them* in **May** by ordering his Model 3 *on the same interactive webpage*.

Tesla provides no explanation for how *other than* relying on the senses of sight and

hearing to *perceive* CEO Musk's public representations on the internet and the solicitation on

Tesla's website, Young could possibly have gotten the idea to order a Model 3 *or have*

*successfully done that via Tesla's* **interactive** *website*, as Young has alleged and as Tesla (and

this Court) must accept as true for purposes of the instant motion.  New Mexico courts will not

develop parties' arguments for them, *Headley v. Morgan Management Corp.*, 2005-NMCA-

045, ⁋ 15, 137 N.M. 339, 110 P.3d 1076, or consider arguments not "minimally supported by

legal argument or authority." *Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992). Tesla

provides no authority for reading the allegations in isolation, or for its absurd, unsupported

arguments, which should be rejected.  *Doe*, 1984-NMSC-024, ⁋ 2; *Leathers*, 856 F.3d 7at 751.

Tesla also conflates and misrepresents Young's well-pled allegations in order to cast

them as "vague assertions and conclusory statements" [Doc. 14, p. 15], such as this one:

"[Young] entered into the Agreement with Tesla, acting in justifiable and detrimental reliance

on the company's misleading, fraudulent, and bad faith affirmative representations and

material omissions alleged herein[.]" Complaint [Doc. 1, p. 24].  Tesla thus argues absurdly:

> *This* allegation . . . does not identify *what* Tesla statements Plaintiff
> purportedly relied on and *indicates* that Plaintiff *simply assumed* based
> on "a plain language reading of the term" FSDC that his vehicle would
> be autonomous by the end of 2019, when "the term" itself *suggests
> nothing* about when such capabilities might become available.

MTD [Doc. 14, p. 15] (emphasis added).  First, nowhere in the Complaint does Young allege that he "assumed" anything based on a plain language reading of "Full Self-Driving Capability."  Tesla uses that *indirect and passive* verb to supplant Young's *direct and active* language and thus: **(i)** controvert the allegations without filing an answer; and **(ii)** blame *Young* for justifiably relying on the misrepresentations of corporate actors whose roles in furthering Tesla's fraud, embezzlement, and unjust enrichment are alleged in great detail, and whose acts expose Tesla to punitive damages.[2] *Albuquerque Concrete Coring Co. v. Pan AmWorld Services*, 1994-NMSC-078, ⁋ 12, 118 N.M. 140, 879 P.2d 772 (principal liable for punitive damages when it authorized, ratified, *or* participated in *fraudulent or criminal* acts of agent).

Second, the allegation containing the phrase "plain language reading of the term Full Self-Driving Capability"[3] does not "indicate" that Young "assumed" anything. As every law student knows, that allegation invokes the canons of construction that the court applies when interpreting the Agreement, whose terms—like the allegations in the complaint—must be read together as a unitary whole, and not in obsessive isolation as Tesla does to improperly controvert the allegations and misdirect the Court's facial plausibility analysis. *Centex/Worthgroup, LLC v. Worthgroup Architects, L.P.*, 2016-NMCA-013, ¶ 18, 365 P.3d 37 (New Mexico courts "strive to give effect to a contract according to its terms"); *Mayfield Smithson Enterprises v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 14, 120 N.M. 9, 896 P.2d 1156 ("almost axiomatic that [a] contract must be construed as a harmonious whole").

---

[2] Complaint, ⁋ 31 [Doc. 1, p. 31] (Tesla ratified, accepted, or acquiesced to false or fraudulent acts and omissions).

[3] Complaint [Doc. 1, p. 16].

Third, no court has ever held that every allegation upon which a plaintiff relies should reside *in a single paragraph*, or that each successive paragraph must parrot the phrase "and also relied on *this* representation to his detriment."  Far from yielding "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed.R.Civ.P. 8(a)(2), Tesla's proposal would yield a discordant tome whose mind-numbing bulk would rival "Finnegan's Wake."[4] Moreover, such a requirement would be nonsensical given the U.S. Supreme Court's directive that the allegations must be read together.  *Tellabs*, 551 U.S. at 322.

The truth is that the allegations *when read together* plainly fix the respective dates of numerous public representations and material omissions predating the Agreement, and clearly explain how they furthered Tesla's illegal scheme. The only *reasonable* inferences a court could draw from Paragraph 40 and all of the other allegations when read together are that Young *saw* or *read* the solicitation on the Model 3 ordering page and, *having perceived it together with all of* the other representations alleged in the Complaint, *justifiably relied on them* when *ordering* on Tesla's *interactive* website.  *Harvard College*, 222 F.Supp.3d at 1059.

Fourth, the Rules of Civil Procedure expressly allow that Young "may set out 2 *or* more statements of a claim . . . alternatively *or* hypothetically, *either* in a single count *or* . . . in separate ones" and that "[i]f a party makes *alternative statements*, the *pleading* is sufficient *if any one of them* is sufficient. Fed.R.Civ.P. 2(d) (emphasis added).

Finally, vagueness or insufficient detail are not grounds for dismissal under Rule 12(b)(6).  If Tesla truly believed that the clarity of the pleadings was deficient, which is denied, it should have moved for a more definite statement under Rule 12(e), rather than controverting the allegations and misdirecting the facial plausibility analysis. Tesla's motion should be denied, and it should be required to answer the Complaint without further undue delay.

---

[4] The reference is to James Joyce's 1939 experimental novel, famous for its length and idiosyncratic language.

However, if the Court were to agree with Tesla that it *is not* reasonable to infer from *all* of the allegations *when read together*, *Tellabs*, 551 U.S. at 322, that Young relied on his senses of sight and hearing in order to perceive, respond to, and rely on Tesla's public representations and the solicitation on its *interactive* website when ordering his Model 3, then for at least two reasons the Court "should dismiss *with leave to amend*[.]" *Staats*, 455 F. App'x at 818.  First, an amendment to add redundant verbs such as "saw," "heard," or "read" is obviously not futile. *Cohen*, 621 F.3d at 1314–15.  Second, leave to amend "shall be freely given when justice so requires[,]" Fed.R.Civ.P. 15(a), as it clearly would require given Tesla's tactics.

## II.   YOUNG'S ALTERNATIVE NON-CONTRACT REMEDIES ARE AVAILING, AND EACH PLAUSIBLY STATES A CLAIM FOR WHICH RELIEF MAY BE GRANTED

### A.   Under New Mexico's election of remedies doctrine, filing a lawsuit is not a conclusive choice of remedies justifying dismissal of alternative claims.

The Tenth Circuit has emphasized that "[i]n a diversity case, the doctrine of election of remedies is an element of state substantive law which we are bound to apply." *McKinney v. Gannett Co.,* 817 F.2d 659, 671 (10th Cir. 1987).  In New Mexico, "commencement of the action is not of itself a conclusive choice of remedies." *Honaker v. Ralph Pool's Albuquerque Auto Sales, Inc.*, 1964-NMSC-142, ⁋ 17, 74 N.M. 458, 394 P.2d 978.  Instead, the election of remedies is "a conscious choice, *pursued to its conclusion*, of one remedy over another." *Salazar v. Torres*, 2007-NMSC-019, ⁋ 17, 141 N.M. 559, 158 P.3d 449 (emphasis added).

Thus, in *Albuquerque Commons P'Ship v. City Council*, 2011-NMSC-001, ⁋ 2, 149 N.M. 308, 248 P.3d 856, the "*jury found in favor of [plaintiff] on **both** claims*, but '[t]he verdict for damages for the takings claim was dismissed ***pursuant to the election of remedies doctrine***, and . . . the district court entered final judgment . . . on the due process verdict[.]'" (emphasis added) (citations omitted). Another familiar example involves tort and contract theories, both of which the court allowed the plaintiff to present to the jury:

the trial court directed a verdict against the plaintiffs with respect to their insurance-bad-faith claim. [. . .] *The judge then submitted the case to the jury under a breach-of-contract theory **and** under the plaintiffs' tort claims* of negligent misrepresentation, negligent investigation, and negligent delay in making payment.

*Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ₱ 11, 135 N.M. 106, 85 P.3d 230 (emphasis added) (internal quotes and citations omitted).

Tesla tries to evade Young's well-pled alternative remedies by: **(i)** omitting any mention of *either* New Mexico's election of remedies doctrine *or* the Tenth Circuit common law requiring this Court to abide that doctrine; and **(ii)** relying on inapposite cases, not one of which considered the facts material to Tesla's argument: **(a)** an integrated contract *with a consumer*; **(b)** *drafted unilaterally* by the company; and which **(c)** *the company contends* does not require *any specific time* for its performance; and where **(d)** *the company contends* that parol evidence *extrinsic to the integrated contract* proves that it has no obligation to perform until some indefinite time "*in the future*[;]" MTD [Doc. 14, pp. 1-2]; and **(e)** a Rule 12(b)(6) motion requesting dismissal with prejudice *before*: **(1)** a factfinder has determined that an enforceable contract exists; and **(2)** Young has been afforded any discovery to test *the company's reliance on parol evidence* to explain the terms of an *integrated* agreement and to *misrepresent and improperly controvert* the well-pled allegations that it must accept as true.[5]

"The general rule is that cases are not authority for propositions not considered."

*Sangre de Cristo Development Corp., Inc. v. City of Santa Fe*, 1972-NMSC-076, ₱ 23, 84 N.M.

---

[5] Those cases are: *Elliott Industries*, 407 F.3d 1091 (10th Cir. 2005) (contract duties *when expressly bargained for* can limit tort liability); *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, 108 N.M. 539, 775 P.2d 741 (commercial setting *with no large disparity* in bargaining power); *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984) (appeal *following verdict by jury*); *Anderson Living Tr. v. ConocoPhillips Co.*, 952 F. Supp. 2d 979 (D.N.M. 2013) (defendants not liable in tort for conduct that parties *agreed in contract* would not cause defendants to be liable); *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, 119 N.M. 542, 893 P.2d 438 (reversing *summary judgment*, remanding to resolve fact issue on indemnification); *Kachina Rentals LLC v. Mobile Storage Group Inc.*, 2009 WL 10666359 (D.N.M. 2009) (*allowing* unjust enrichment claim, dismissing fraudulent misrepresentation *based on same duty* in non-compete clause); *Fogelson v. Wallace*, 2017-NMCA-089, 406 P.3d 1012 (conversion dismissed under Rule 1-041(B) *following close of case in chief at trial*).

343, 503 P.2d 323.  Not one of Tesla's cases involved a contract like the Agreement, whose provisions do not bar Young's alternative remedies at law or in equity. Tesla's cases are not authority for its request to dismiss Young's alternative remedies, which should be denied.

>    **B.    Unjust Enrichment.**

The Tenth Circuit has noted that "New Mexico courts have consistently held that fairness, justice and right dealing is an equity concept *that dominates all* commercial practices and transactions." *McKinney,* 817 F.2d at 671 (quoting *Cornell v. Albuquerque Chemical Co.,* 1978-NMCA-079, ⁋ 42, 92 N.M. 121, 584 P.2d 168 (emphasis added) (internal quotes omitted). Young alleges sufficient facts for each element of unjust enrichment, which are: "[i] another has been knowingly benefitted at one's expense [ii] in a manner such that allowance of the other to retain the benefit would be unjust." *Applied Capital, Inc. v. Gibson*, 558 F.Supp.2d 1189, 1200 (D.N.M. 2007) (quoting *Ontiveros Insulation Co., Inc. v. Sanchez*, 2000-NMCA-051, ⁋ 11, 129 N.M. 200, 3 P.3d 695).  *See* Complaint [Doc. 1, *esp.* pp. 9-4, 17-48].

Critically in this case, the principle of equity underlying unjust enrichment "looks to the substance rather than the form.  It will not sanction an unconscionable result *merely because it may have been brought about by means which **simulate** legality*." *Ontiveros*, 2000-NMCA-051, ⁋ 13 (emphasis added). That is precisely what Young alleges in dozens of paragraphs such as the following, which when read together with *all* of the others, *Tellabs*, 551 U.S. at 322, detail how Tesla lied to Young in order to simulate a legal basis for keeping his money:

> Tesla informed Young on April 29, 2021 that it intends to keep his money indefinitely, *pending regulatory approval by an unidentified government agency, notwithstanding that as of December 28, 2020 the company had not even applied for* a driverless vehicle test permit in either California or New Mexico, *and notwithstanding* that Tesla informed the California DMV on that date that "we *do not expect* significant enhancements" that would render Tesla's vehicles capable of autonomous self-driving, *and despite* Tesla's admission to the same agency on March 9, 2021 that the

feature was *still* an SAE Level 2 driver-support feature and that SAE automated driving *will not* be delivered yet again in 2021.

Complaint [Doc. 1, p. 46].  Young also alleged in great detail how Tesla's Associate General Counsel Eric Williams, Sales Manager Antoinette Scrosoppi, and others yet to be identified *simulated a legal basis for* the company's unjust enrichment.  Complaint [Doc. 1, pp. 38-44].

Like New Mexico's procedural rules, Federal Rules of Civil Procedure 8(a)(3) and 8(d)(2) expressly allow alternative claims. Fed.R.Civ.P. 2(d).  This Court has acknowledged that in New Mexico "unjust enrichment is widely accepted as an alternative theory of recovery, ***should** the factfinder determine* that no contract between the parties exists." *Strobel v. Rusch*, 431 F.Supp.3d 1315, 1331 (D.N.M. 2020) (emphasis added).  That is certainly possible, given the parol evidence Tesla uses to controvert Young's well-pled allegations, including Tesla's illusory promise to perform "*in the future*." MTD [Doc. 14, p. 1]; *cf.* Complaint [Doc. 1, p. 26].

Young's unjust enrichment claim cannot be dismissed through a Rule 12(b)(6) motion, because: **(i)** there is no requirement that Young elect remedies until close of evidence; and **(ii)** no factfinder has yet determined whether an enforceable contract exists. Tesla provides no authority for its contrary arguments, which should be rejected.  *Doe*, 1984-NMSC-024, ⁋ 2.

## C.    Fraud.

Tesla argues the following in an attempt to dismiss Young's fraud claim:

> Plaintiff's Fraud claim fails because he pleads none of the required elements, **and fails entirely to meet the *heightened* pleading standard applicable under Rule 9(b).**[6]  Indeed, Plaintiff does not allege he actually saw or heard any of the alleged misstatements before buying his vehicle, *nor does he allege any facts suggesting that Tesla supposedly intended to defraud him*.

MTD [Doc. 14, p. 2] (emphasis added). Young has already addressed Tesla's tactic of flouting the Court's requirement to read the allegations together in order to misdirect the facial

---

[6] The truth is "the Court ***is not** requiring heightened fact pleading*[.]" *Twombly*, 550 U.S. at 547 (emphasis added).

plausibility analysis.  But Tesla's *factual* statement to support its legal arguments—italicized in the above paragraph—reveals how the company's tactics are designed to make its misrepresentation and improper controversion of Young's allegations appear legitimate.

In New Mexico, the elements of fraud based on misrepresentations are as follows:

> **First**, a representation of fact was made which was not true;
> **Second**, either the falsity of the representation was known to the party making it or the representation was recklessly made;
> **Third**, the representation was made with the intent to deceive and to induce _____ *(party claiming fraud)* to rely on the representation; and
> **Fourth**, _____ *(party claiming fraud)* did in fact rely on the representation.
> Each of these elements must be proved by clear and convincing evidence

UJI 13-1633 NMRA 2002 (bolt font added; italics in original) (instruction upheld in *Williams v. Stewart*, 2005-NMCA-061, 137 N.M. 420, 112 P.3d 281).

As to the first element: Young alleges dozens of false factual representations and material omissions by actors including CEO Musk, the Board of Directors, attorney Williams, and sales manager Scrosoppi.  *See* Complaint [Doc. 1, pp. 1-44].  Tesla's tactic is to select transitional paragraphs *referring to* the above allegations, *read them in isolation*, and then pretend not to understand how human beings apprehend the world around them.

As to the second element: Young alleges in pertinent part that

> ***Tesla knew*** *that its highly specific, public representations during 2019* about the efficacy of Full Self-Driving Capability, *and* the company's promise to deliver the feature as an automatic software update by year's end, ***were false***, *misleading, and in bad faith* . . .

> *Tesla's most valuable trade secret* ***was that it had lied***, *cynically plotting to exploit the tension between Americans' dependence on and affinity for their automobiles, and their growing guilt over contributing to devastating climate change*.  ***Tesla's motive for acting in furtherance of its fraudulent embezzlement scheme*** *was the oldest and basest on earth: greed.*

Complaint [Doc. 1, pp. 10-11] (emphasis added).

<u>As to the third element</u>: Young pleads in great detail dozens of facts which he specifically alleges "were collectively intended to mislead, and did in fact mislead Young to believe that the feature *was* available at the time of his order, *was* equivalent to SAE *Level 4 or 5* automated driving, and *would be* delivered before year's end." Complaint [Doc. 1, p. 17]; *but see also* [Doc. 1, pp. 1-44, 51-52, 56-58, etc.].  Indeed, one extended paragraph makes clear how Tesla's lies *before and after* the purchase were intended to further Tesla's illegal scheme:

> [I]nstead of revealing the truth, Tesla recklessly, wantonly, fraudulently, and in bad faith **concealed** its engineering failures **and made** highly specific, **false, and misleading representations** via the wires **in order to**:
>
> (i) **confuse Young** about what Full Self-Driving Capability was and how Tesla's claims should be evaluated under the SAE automated driving standards used by the auto industry and government regulators, **thus concealing that Tesla knew** it had not developed and could not deliver *any* level of SAE automated driving by December 31, 2019;
>
> (ii) **provide a facially plausible justification for what Tesla knew** would be its failure to perform as promised, **and thus conceal its unlawful scheme** to refuse to refund and instead to embezzle Young's money;
>
> (iii) *lull Young* into a false sense of complacency to prevent him from discovering and timely seeking redress for Tesla's wrongful and unlawful scheme[.]

Complaint [Doc. 1, pp. 10-11] (emphasis added). Courts have for generations recognized tactics like those alleged above "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendant [ ] less likely[.]" *United States v. Maze,* 414 U.S. 395, 403 (1974).

<u>As to the fourth element</u>: Young alleges in great detail which of Tesla's acts and omissions he relied on to his detriment. [Doc. 1, pp. 1-44, 55-60]  Tesla merely repeats its tactic of pretending not to understand how human beings apprehend the world around them:

> [Young] does not make the required connection of alleging that Plaintiff actually was exposed to and relied on any of the

referenced statements. For example, Plaintiff refers to podcasts
involving Mr. Musk *but states no facts to show he actually listened
to or was even aware of them before purchasing his vehicle*.

MTD [Doc. 14, p. 16] (emphasis added).

Even if the Court were to abandon its rule requiring that all of the allegations must be
read together as unitary whole, *Tellabs*, 551 U.S. at 322, and pretend along with Tesla that
Young did not hear, see, or read its misrepresentations alleged throughout the Complaint—but
instead is endowed with some sort of extra-sensory perception—then it "should dismiss *with
leave to amend*[,]" *Staats*, 455 F. App'x at 818, so that Young may add the redundant verbs
"heard," "saw," "read," which would obviously not be futile. *Cohen*, 621 F.3d at 1314–15.

But an outcome more consistent with the Court's rules, logic, and common sense would
be to deny Tesla's motion and require it to answer without further delay, so that Young may
discover "the fullest possible knowledge" of Tesla's misconduct. *Hickman*, 329 U.S. at 501.

### D.    Negligence Per Se.

Tesla relies on non-binding, foreign opinions to argue that a statute must create a
private cause of action to ground a negligence per se claim. Of course, New Mexico state and
federal courts have for generations maintained precisely the opposite view, and have regularly
upheld related jury instructions. *See e.g. Archibeque v. Homrich*, **1975**-NMSC-066, 88 N.M.
527, 543 P.2d 820 (traffic statutes; remanding for new trial); *Apodaca v. AAA Gas Co.*, **2003**-
NMCA-85, 134 N.M. 77, 73 P.3d 215 (Albuquerque Fire Code); *Rawers v. United States*, 488
F.Supp.3d 1059 (D.N.M. **2020**) (traffic statutes; remanding, granting plaintiff's MSJ).

However, if the Court agreed with Tesla that Young's claims present first-impression
questions, then dismissal with prejudice is not appropriate because the Rules expressly provide
for "a nonfrivolous argument for extending, modifying, or . . . establishing new law[.]"

Fed.R.Civ.P. 11(b)(2).   Thus, after certifying to the Oklahoma Supreme Court a similar question of whether a negligence per se claim may be based on violation of a federal regulation with no private right of action, the Tenth Circuit reversed dismissal of such a claim.  *Howard v. Zimmer*, 718 F.3d 1209, 1210 (10th Cir. 2013).  Like Young, Howard expressly disclaimed a private right of action, and brought "a state claim based on duties that *parallel, rather than add to*, federal requirements." *Id.* (emphasis added).  *See* Complaint, ⁋ 7, n. 5 [Doc. 1, p. 12].

Not content to ignore binding common law and distort the court's rules governing Young's claims, Tesla selectively quotes the federal wire fraud statute to make it appear too general. The <u>underlined</u> language below is Tesla's, while the **bolded** language reveals the terms specifying prohibited conduct that plainly encompasses Tesla's acts and omissions:

> **Whoever, having devised or intending to devise any** <u>scheme or artifice to defraud</u>, **or for obtaining money or property by means of** <u>false or fraudulent pretenses, representations, or promises</u>, **transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both**.

18 U.S.C. § 1343 (emphasis added).  Young alleges in detail *when* Tesla did *what* the statute prohibits, *which* corporate actors furthered its felonious activity, *the means* they employed, and Tesla's requisite *mens rea*. [Doc. 1, pp. 1-44, 50-55].  Tesla's motion should be denied.

**E.   Civil Conversion.**

Tesla's only argument concerning Young's civil conversion claim is that it is barred by the existence of the Agreement. However, as argued above: **(i)** in New Mexico "commencement of the action is not of itself a conclusive choice of remedies[,]" *Honaker*, 1964-NMSC-142, ⁋ 17; **(ii)** a jury has not found that an enforceable contract exists; and **(iii)** the Court has not required Young to elect remedies.  Tesla's motion should be denied.

**III.**     **THE COMPLAINT PLAUSIBLY STATES A CLAIM FOR BREACH OF CONTRACT**

**A.**     **A plain language interpretation of the integrated Agreement yields an enforceable obligation to deliver Full Self-Driving on May 20, 2019.**

The canons of contract interpretation doom Tesla's attempt to escape its obligations in the contract that it drafted.   First, New Mexico courts "strive to give effect to a contract according to its terms." *Centex/Worthgroup*, 2016-NMCA-013, ¶ 18.  Thus, "the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves." *Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 31, 123 N.M. 526, 943 P.2d 560 (citation omitted). The terms of the Agreement control Young's claim for Tesla's breach.

Second, New Mexico courts "construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it." *Castillo v. Arrieta*, 2016-NMCA-040, ¶ 10, 368 P.3d 1249 (quoting *Heye v. Am. Golf Corp.,* 2003–NMCA–138, ¶ 14, 134 N.M. 558, 80 P.3d 495). Because Tesla drafted the Agreement unilaterally with no opportunity to negotiate terms, any ambiguities the Court might identify must be interpreted to protect Young's rights.

Third, "[a] contract will be found ambiguous only if it is *reasonably* susceptible to different constructions. Merely because the parties differ on the proper construction *does not* establish an ambiguity." *Trujillo v. CS Cattle Co.*, 1990-NMSC-037, ¶ 14, 109 N.M. 705, 790 P.2d 502 (emphasis added) (parol evidence improperly admitted, reversing judgment) (citations omitted). Whether a contract's terms are ambiguous is a question of law reviewed de novo.  *City of Sunland Park v. Harris News, Inc*., 2005-NMCA-128, ¶ 13, 124 P.3d 566.

Fourth, "parol evidence is not admissible to alter or vary unambiguous language in a contract or deed *or for the purpose of rendering an otherwise clear contract provision ambiguous*." *Id.* (emphasis added) (quoting *Clark v. Sideris*, 1982-NMSC-151, 99 N.M. 209, 656 P.2d 872 (absent ambiguity, court will not go beyond four corners to ascertain intent).

Fifth, a district court "cannot change contract language for the benefit of one party to the detriment of another" and "[i]n the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot make a new agreement for the parties." *Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 23 (citing to various cases, citations omitted).

Finally, it is "almost axiomatic that [a] contract must be construed as a harmonious whole." *Mayfield*, 1995-NMSC-034, ¶ 14.

In urging the Court to dismiss Young's breach of contract claim with prejudice, Tesla presents *the legal argument* that "the purported obligations [Young] seeks to enforce are found nowhere in the Agreement[,]" but also represents *as a factual matter* that Young "*points to no term* in the Agreement" supporting his claim that "Tesla was required to deliver a Model 3 vehicle that could drive itself autonomously with no human intervention before the end of 2019[.]"  MTD [Doc. 14, p. 9] (emphasis added).  Once again, the truth is very different.

In fact, Young expressly identifies *two* contractual terms that, construed together "as a harmonious whole[,]" *Mayfield*, 1995-NMSC-034, ¶ 14, plainly obligate Tesla to deliver a Model 3 fully capable of driving itself on May 20, 2019.  The first such term is "Full Self-Driving Capability."  Young alleges the following regarding the term at the core of this lawsuit:

> According to the Merriam Webster Dictionary, the adjective "full" means "lacking restraint, check, or qualification" or "not lacking in any essential[,]" e.g., "in *full* control of your senses" or, in the instant case, *Full* Self-Driving Capability.  The adjective "self" means "of the same kind … as something with which it is used[,]" e.g., "*self* trimming" or, in the instant case, "Full *Self*-Driving Capability."  The adjective "capable" means "having attributes ... required for performance or accomplishment" of a task, e.g., "*capable of* intense concentration" or, in the instant case, *capable of* full self-driving or "Full Self-Driving *Capability*."

Complaint [Doc. 1, pp. 15-16] (citations omitted).  The second such term is "available at the time of order" which was in May of 2019.  Complaint [Doc. 1, *esp.* pp. 1, 15-17, 45, 47].

Young relied on the Merriam Webster Dictionary because New Mexico courts, including this one, routinely default to the same source to establish the ordinary meaning of contractual and statutory terms. *See e.g. Aubrey L. Dunn v. New Mexico Dept. of Game and Fish*, 2020-NMCA-026, ⁋ 8, 464 P.3d 129, n. 3-4; *Eldorado Cmty. Improvement Ass'n v. Billings*, 2016-NMCA-057, ⁋ 7, 374 P.3d 737; *see also Porta v. United States Office of Personnel Mgt.*, 2013 WL 11549575, *12 (D.N.M. 2013) (rejecting party's argument for interpretation contrary to ordinary meaning of statutory language and creating absurd result).

Tesla neither proposes *any* alternative interpretation of the contractual terms grounding Young's breach of contract claim nor offers *a single case* that would support a different interpretation. That failure is sufficient to deny Tesla's request to dismiss Young's breach of contract claim. *Doe*, 1984-NMSC-024, ⁋ 2, 100 N.M. 764, 676 P.2d 1329; *Leathers*, 856 F.3d at 751 (inadequately briefed issues, unsupported arguments not properly before court).

Instead, Tesla engages in a three-part semantic shell game, whereby it: **(i)** improperly controverts the allegations with the demonstrably false *factual contention* that Young never identified "Full Self-Driving Capability" or "available at the time of order" *as contractual terms* grounding his claim; **(ii)** posits *as a matter of law* that the term *it created to describe the feature at the heart of this lawsuit* has no intrinsic meaning and thus no legal significance for its obligations *under an integrated contract that it drafted unilaterally*; and **(iii)** points to Young's use of that term in *also* supporting his *fraudulent inducement claim*, to improperly controvert *the fact* that Young *expressly alleged* that a plain language reading of *the same term* also supports his *breach of contract claim*, consistent with the canons of interpretation that Tesla does not mention and whose significance it pretends not to understand:

> 90. **On or about May 20, 2019**, *Tesla and Young entered into the Agreement*, **which provides** in pertinent part that:

> (i) Young's 2019 Model 3 "is priced *and configured based on features and options **available at the time of order***[;]" and
>
> (ii) $6,000 of the $60,100 consideration paid by Young *is expressly for an optional feature called "**Full Self-Driving Capability.***"
>
> 91. ***As a plain-language reading of the term Full Self-Driving Capability implies***, *the optional feature is equivalent to SAE Level 4 or 5 driving automation, whereby a vehicle can safely drive itself through traffic without intervention by a human.*

Complaint [Doc. 1, pp. 44-45] (citing Exhibit A) (emphasis added).

Even if viewed in the most charitable light possible, Tesla's feigned ignorance of allegations expressly identifying two contractual terms that, "construed as a harmonious whole[,]" *Mayfield*, 1995-NMSC-034, ¶ 14, create the obligation at issue amounts to subjective disagreement that cannot create ambiguity as a matter of law. *Trujillo*, 1990-NMSC-037, ¶ 14.

To support a *colorable* argument, however, such disagreement would require Tesla to have: **(i)** *acknowledged the existence and role of* the two terms expressly grounding Young's breach of contract claim; and **(ii)** *proposed an alternative interpretation for* each term. Instead, in a bid to improperly controvert the allegations, misdirect the facial plausibility analysis, and avoid accountability for its breach, Tesla feigns ignorance of *the existence, substance, and express role of* two terms in Young's allegations, *as well as their legal significance* under the New Mexico canons of contract interpretation that it fails to mention or apply.

The Court must "construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it." *Castillo*, 2016-NMCA-040, ¶ 10. That is proper where Tesla's request to dismiss Young's contract claim relies on misrepresenting the existence, substance, and role of the allegations, and is unsupported by any authority. *Doe*, 1984-NMSC-024, ¶ 2; *Leathers*, 856 F.3d at 751 (unsupported arguments not properly before the court).

**B.      The Agreement is enforceable even if interpreted as Tesla proposes.**

The Agreement expressly provides that Full Self-Driving Capability is "available at the time of order." Complaint, Exhibit A [Doc. 1, p. 128].  Tesla completely ignores the canons of interpretation that govern this Court's analysis of the unambiguous term "available at the time of order," and argues that it has no obligation to perform and deliver the feature until some indefinite time "*in the future*," MTD [Doc. 14, pp. 1, 10-11], notwithstanding that it received Young's consideration in full. Complaint [Doc. 1, pp. 88, 108-09]. Tesla's argument should be rejected as unsupported, *Doe*, 1984-NMSC-024, and contrary to settled New Mexico law.

However, the court has also clarified that

> "[i]n some situations it is within the power of one party to make the agreement enforceable even without the other party's agreement.  *If the term subject to agreement is also one that is subject to complete concession by the party that wants to have the agreement performed, that party's concession has been held to cure the indefiniteness*.  For example, all that was left to agreement in an option to buy land were the terms on which the stated price was payable.  The option was held to be enforceable where the purchaser 'tendered himself as ready, willing, and able to pay the agreed price therefor, either in cash or upon such terms as [the vendor] might impose,' and later actually tendered cash.

*Padilla v. RRA,* Inc., 1997-NMCA-104, ⁋ 13, 124 N.M. 111, 946 P.2d 1122 (citing E. Allan Farnsworth, *Farnsworth on Contracts*, § 3.29, at 368–(1990) (emphasis added).

In this case, Young paid Tesla the consideration required under the Agreement in full in May of 2019, whereupon all that was left to agreement—*according to **Tesla's** reading of the Agreement **contrary to** the canons of interpretation*—was the precise time of performance:

> Plaintiff's breach of contract claim fails *because the purported obligations he seeks to enforce are found nowhere in the Agreement*.  Specifically, Plaintiff claims *Tesla was required to deliver* a Model 3 vehicle that could drive itself autonomously with no human intervention before the end of 2019 (Compl. ¶¶ 15, 16), *but points to **no term** in the Agreement to that effect.* [. . .]

> [E]ven if Plaintiff had seen Tesla's alleged statements before purchasing his vehicle . . . and even if they contained the promises that Plaintiff claims . . . *Plaintiff's contract claim would still fail **because the Agreement is an integrated contract,** which provides*: "Prior agreements, oral statements, negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement." [. . .]  *Any expectations Plaintiff allegedly formed from Tesla's website or from Elon Musk's February 2019 statements were thus superseded by the express terms of the Agreement, **which contains no promise that the FSDC features of Plaintiff's Model 3 would include fully autonomous driving without human intervention by the end of 2019***.

MTD [Doc. 14, p. 9] (emphasis added) (internal citations omitted).

Young's breach of contract claim asserts that because the ordinary meaning of the Agreement's language provides that "Full Self-Driving Capability" is "available at the time of order" in May of 2019, Tesla breached its obligation to perform on the day it received Young's consideration of $60,100 and failed to perform.  But Tesla argues in the instant Motion that Young understood and conceded, *pursuant to the contractual language that Tesla quotes in its motion*, that the company's performance is not required on a date certain but at some indefinite time "*in the future*"—a time which has not arrived and which, for purposes of an enforceable action sounding in contract, Tesla contends *cannot be determined or enforced by the Court*.

However, under the principle articulated in *Padilla*, any indefiniteness that a jury might find in the Agreement vis-à-vis the date of Tesla's required performance is cured by what Tesla argues is Young's concession, thus rendering the contract enforceable without Tesla's agreement as a matter of law.  *Padilla v. RRA,* Inc., 1997-NMCA-104, ¶ 13.

C.    **Tesla's arguments and parol evidence require that its 12(b)(6) motion be denied in favor of a trial or converted to a motion for summary judgment.**

As regards the time of Tesla's required performance, the company argues that:

> even if Plaintiff had seen Tesla's alleged statements before purchasing his vehicle . . . and even if they contained the promises

that Plaintiff claims . . . *Plaintiff's contract claim would still fail* **because the Agreement is an integrated contract,** *which provides*: "Prior agreements, oral statements,  negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement." [. . .]  *Any expectations Plaintiff allegedly formed from Tesla's website or from Elon Musk's February 2019 statements were thus superseded by the express terms of the Agreement,* **which contains no promise that the FSDC features of Plaintiff's Model 3 would include fully autonomous driving without human intervention by the end of 2019**.

MTD [Doc. 14, p. 9] (emphasis added) (internal citations omitted).

As this Court recently reiterated, in New Mexico "when an agreement does not specify a time for performance, it is implied that it is to be performed within a reasonable time, and what is a reasonable time is a question of fact." *Oliver v. Meow Wolf, Inc.*, 2020 WL 6939875, slip op., *7 (D.N.M. 2020) (quoting *Beaver v. Brumlow*, 2010-NMCA-033, ¶ 30, 148 N.M. 172, 180, 231 P.3d 628, 636).  The New Mexico Court of Appeals in *Beaver* cited for the same proposition to its earlier opinion in *Smith v. Galio*, 1980-NMCA-134, 95 N.M., 617 P.2d 1325, where the court ruled *under the evidence adduced by the parties* that a period of three months was not sufficient to find that a reasonable time for performance had elapsed.  *Id.* at ¶ 5.

Tesla's request to dismiss Young's contract claim involves: **(i)** denying the existence of—and thus improperly controverting—the allegations in Paragraphs 90 and 91 expressly identifying two terms that create Tesla's obligation, in order to; **(ii)** arguing there is no specified time for performance within the four corners of the Agreement; while **(iii)** presenting parol evidence for the proposition that Tesla's required time of performance under *the integrated agreement* is some indefinite time "*in the future*." MTD [Doc. 14, pp. 1-2, 4, 6, 10].

As a matter of law, Tesla's contention about the time of performance is a factual dispute that must be resolved by the jury that Young has demanded, *Oliver*, 2020 WL 6939875, *7, following the completion of discovery, whose scope this Court has emphasized is

"deliberately broad." *See e.g. Martinez Cornell Corrections of Texas*, 229 F.R.D. 215, 218 (D.N.M. 2005).   The need for such discovery is obvious because Tesla's parol evidence reinforces Young's allegations as to time of performance.

Tesla's first exhibit to its judicial notice undermines its arguments because: **(i)** it is but one of several ordering pages and thus incomplete; **(ii)** the features "available at time of order" must be selected through those *interactive* pages, which therefore must be encompassed as terms of the ostensibly integrated Agreement; and **(iii)** it specifies the reasonable time of performance just above the button to order the feature: "Coming later this year: Recognize and respond to traffic lights and stop signs; Automatic driving on city streets." [Doc. 15-1, p. 2]

The second exhibit is excerpted below. The *underlined italicized* passages are language supporting the allegations with the **bolded** passages selected by Tesla in its motion:

> *Then, also for in defining autonomy or full self-driving, I think we will be feature-complete, full self-driving this year, meaning the car will be able to find you in a parking lot, pick you up, take you all the way to your destination without an intervention. This year. I would say that I am  certain of that. That is not a question mark*. However, people sometimes will extrapolate that to mean now it works with 100% certainty requiring no observation perfectly. This is not the case. Once it is feature complete, then you're sort of, kind of the march of 9s, like how many 9s of  reliability do you want it to be. **And then when do regulators agree that it is that reliable.**
>
> *So, there's feature-complete plus full self-driving, this year, with certainty. This is something we control, and I manage autopilot engineering directly every week in detail. So I'm certain of this*. **Then, when will regulators allow us even to have these features turned on with human oversight. That is a veritable wish we have limited control over. Then, it's when will regulators agree that these things can be done without human oversight, and that is another level beyond that.** So, these are externalities we don't quite control, and the conservatism of regulators varies a lot from one jurisdiction to another.

[Doc. 15-2 pp. 14:4 to 15:8] (emphasis added)

In the Complaint, Young quoted CEO Musk's first above statement, wherein he expressly defined what the term at the heart of this lawsuit means *in the view of Tesla*. Complaint [Doc. 1, p. 19]. But as Tesla's own submission makes clear, CEO Musk then *reiterates, reinforces, and elaborates on* the statement Young quoted in the Complaint: "So, there's *feature-complete plus full self-driving*, **this year, with certainty**. *This is something we control, and* **I manage autopilot engineering directly every week in detail**. **So I'm certain of this**." Doc. [15-2 pp. 14:4 to 15:8] (emphasis added)

If the Court were to agree that Tesla attempts to improperly controvert numerous allegations that must be taken as true for purposes of its Rule 12(b)(6) motion, then Tesla's request for relief should be denied in favor of a jury trial on the merits.  However, if the Court determined that Tesla's Rule 12(b)(6) motion to dismiss should be converted to a Rule 56 motion for summary judgment, then Young should be allowed to submit an affidavit under Rule 56(d)(2) describing discovery necessary to oppose Tesla's requested relief.  At a bare minimum, that must include depositions duces tecum of CEO Musk, the Board of Directors, and of the engineers and executives whose revelations recently reported by the *New York Times* belie Tesla's misrepresentations.[7] Complaint, *esp.* ¶¶ 25-31, 37-39 [Doc. 1, pp. 19-24].

Dated: December 10, 2021                    Respectfully submitted:

                                            JOEL YOUNG ATTORNEY AT LAW, LLC

                                            *[s] Joel M. Young*
                                            Joel M. Young
                                            P.O. Box 424
                                            Placitas, NM 87043
                                            (505) 243-5696
                                            jmyoung@swcp.com

                                            *Plaintiff pro se*

---

[7] Cade Metz, *Elon Musk Pushed for Unflinching Vision of Self-Driving Cars*, N.Y.Times A1, Dec. 7, 2021.

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2021, the foregoing was electronically filed via the CM/ECF system, causing the following parties to be served by electronic means:


COOLEY LLP
Whitty Somvichian (Admitted Pro Hac Vice)
Colin S Scott. (Admitted Pro Hac Vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
wsomvichian @cooley.com
cscott@cooley.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Tyler M. Cuff
201 Third St. NW, Suite 2200
Albuquerque, NM 87102
(505) 768-7267
tcuff@rodey.com

*Counsel for Defendant Tesla, Inc.*


By:    /s/ Joel M. Young
       Joel M. Young

       *Plaintiff pro se*